REQUESTED BY: Dear Senator:
Legislative Bill 577 reads as follows:
 "Section 1. Any first or second-class city or village may wall, enclose, or cover over that segment of any irrigation or drainage ditch, canal, or lateral, whether on public or private property, which lies within the corporate limits of such city or village, and for this purpose may acquire and hold land or an interest in land, except this section shall not be construed to authorize the taking of property without payment of compensation when required by law. Such city or village may undertake and finance a project authorized by this section either independently or jointly with any person owning or operating such irrigation ditch, canal, or lateral."
You have requested our opinion as to whether even under present law cities may possess `the authority to make the type of expenditure being proposed by this bill.' If it be the case that cities now have the power to accomplish the intended objectives of LB 577, it must be found to exist by virtue of general municipal police powers. We do not believe that to be the case.
In order for a city to legally justify, under the police power, any action by way of compulsory enclosure or coverage of drainage or irrigation system works such as ditches, canals, or laterals, first as a necessary prerequisite to such action there would need be a valid determination by the city to the effect that the mere presence of any such facility within the municipality constituted a condition inimical to the public safety, health or welfare (i.e., a public nuisance) which the proposed exercise of the police power would eliminate or alleviate. Many years ago the City of Scottsbluff sought to solve the problem of potential dangers incident to an open irrigation canal located within the city; and, for that purpose, the city enacted an ordinance declaring that `all open ditches and canals extending through any part of the city . . . are dangerous to health, life, and property of inhabitants of the city and the public generally, and are public nuisances.' Upon the ostensible authority of that ordinance, the city then instituted an action against an irrigation company seeking to compel compliance with other portions of the ordinance which required either abandonment of the ditch or canal or, as an alternative, the construction of a pipe or conduit to carry the water flow. See City of Scottsbluff v. Winters CreekCanal Co., 155 Neb. 723, 53 N.W.2d 543 (1952). However, the Nebraska Supreme Court declared the ordinance to be unconstitutional. Specifically, the court found that the mere existence of an open ditch was not a nuisance, in and of itself. Assuming that there was nothing otherwise inherently dangerous about the original construction and that there was no dangerous condition created through negligent maintenance or operation thereof, the court noted with rather blunt realism: `Nothing is harmful or dangerous aside from the fact that the people live near it and may fall into it.' The opinion of the court goes on to observe that the general power of a city to declare, prevent, and abate nuisances does not include a power to declare as a nuisance anything which is not in fact a nuisance per se.
There has been no significant change in the relevant statutory law since the Scottsbluff case. Accordingly, upon the basis of the decision and opinion in that case, it is our opinion that cities do not presently, under the general municipal police power, have authority whereby a city may cause the enclosure or covering of open drainage or irrigation ditches and the like. Furthermore, in addition to and independent of that conclusion, there is another aspect involved with LB 577 which perhaps deserves some mention.
Even if it were the case that under the general police power cities could enclose or cover such drainage or irrigation works, and expend public funds for such purpose, it must be realized that a city in undertaking any such project would be exercising a measure of dominion and control over private property owned by other persons or parties. This would require (except where the owner might consent) the exercise of eminent domain. Eminent domain is not a power inherently possessed by governmental subdivisions; but, rather, it is a power which may exist only through express legislative grant.
Insofar as pertinent to the subject under consideration, the eminent domain powers of cities of the first and second class (those affected by LB 577) are contained in Chapter 19, Article 7 of the statutes; and we find nothing therein which would appear to authorize acquisition of rights in privately owned property for purpose such as that contemplated by LB 577.
For the reasons above expressed, we are of the opinion that the objects and purposes which are authorized in LB 577 could not be accomplished under existing law without further specific enabling legislation such as that for which appropriate provision appears to be made in that bill.